**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
at LONDON**

**CIVIL ACTION NO. 07-50-DLB**

**DENNIS RADY CASTER**                                                               **PLAINTIFF**

vs.                     **MEMORANDUM OPINION & ORDER**

**MICHAEL J. ASTRUE, Commissioner**
**of Social Security**                                                     **DEFENDANT**

\* \* \* \* \* \* \* \* \* \* \* \* \*

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record and for the reasons set forth herein, hereby reverses and remands the decision of the Commissioner.

**I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff Dennis Rady Caster filed an application for Disability Insurance Benefits (DIB) on March 25, 2005. (Tr. 57-61). Plaintiff alleges he became unable to work on January 15, 2003. (Tr. 57). He alleges disability due to stomach ulcers, diabetes, a cardiac condition, and bipolar disorder. His application was denied initially and upon reconsideration. (Tr. 41-51). At Plaintiff's request, an administrative hearing was conducted on June 1, 2006, by Administrative Law Judge (ALJ) Frank Letchworth. (Tr. 654-96). On July 19, 2006, the ALJ ruled that Plaintiff was not disabled and therefore not entitled to DIB. (Tr. 20-29). This decision became the final decision of the Commissioner when the Appeals Council denied review on December 16, 2006. (Tr. 9-11).

1

On February 8, 2007, Plaintiff filed the instant action. The matter has culminated in cross motions for summary judgment, which are now ripe for adjudication. (Doc. # 13, 14).

## II. DISCUSSION

### A. Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See id.* Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *See Her v. Comm'r of Social Security*, 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis. Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of the claimant's impairments are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform his past relevant work; and Step 5, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *See Jones v. Comm'r of Social Security*, 336 F.3d

469, 474 (6th Cir. 2003); *Preslar v. Secretary of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

**B.     The ALJ's Determination**

At Step 1, the ALJ found that claimant continued to work at substantial gainful activity levels until March 1, 2005, but had not engaged in substantial activity since that date. (Tr. 21, 27). Thus, the ALJ determined that claimant is not entitled to disability benefits from the alleged onset date of January 15, 2003, through March 1, 2005. (*Id.*) At Step 2, the ALJ found Plaintiff's coronary artery disease (residuals of coronary artery bypass surgery), residuals of bleeding stomach ulcer, and bipolar disorder to be severe within the meaning of the regulations. (Tr. 23, 27). At Step 3, the ALJ found that Plaintiff does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulation No. 4. (*Id.*) At Step 4, the ALJ found that Plaintiff retains the residual functional capacity (RFC) to perform a range of light exertional work with the additional following restrictions:

> Based on the claimant's breathing condition, he is restricted to work that requires no exposure to pulmonary irritants. Based on the claimant's mental impairments he is restricted to work that requires only simple object focused tasks; where public and co-worker contact is casual and infrequent; and, where changes in workforce are infrequent and gradually introduced.

(Tr. 25, 28). Based upon this RFC, the ALJ concluded at Step 4 that Plaintiff was unable to perform his past relevant work as a lumber handler and a production assembler (Tr. 26, 28).

Accordingly, the ALJ proceeded to the final step of the sequential evaluation. At Step 5, the ALJ found that, there were a significant number of jobs available to Plaintiff in the national and regional economies, despite his limitations. (Tr. 27, 28). This conclusion

resulted from testimony by a vocational expert (VE), in response to a hypothetical question assuming an individual of Plaintiff's age (52 years of age and so an "individual closely approaching advanced age"), education (high school), work experience (no transferable skills from any past relevant work), and RFC. (*Id.*)  The VE testified that Plaintiff could work as a production assembler, a production laborer, or a hand packer. (*Id.*)  Since these were positions of significant number in both the regional and national economies, the ALJ concluded Plaintiff was not disabled under the Social Security Act. (*Id.*)

**C.     Analysis**

Plaintiff raises two general challenges in his appeal.  First, Plaintiff claims that the findings as to Plaintiff's RFC are not supported by substantial evidence. (Doc. #13-2 at 8). More specifically, Plaintiff argues that the ALJ failed to give proper weight to the opinion of a treating physician and further erred in his duty to re-contact that treating source for clarification before dismissing his report as "internally inconsistent." (*Id.*)  Second, Plaintiff argues that the ALJ erred in failing to undertake a proper analysis of Plaintiff's credibility. (*Id.*)

**1.     Plaintiff's RFC**

Plaintiff argues that, in determining claimant's RFC, the ALJ failed to provide an adequate basis for his rejection of the opinions of claimant's treating physician, Dr. William Massey.  Moreover, Plaintiff argues that the ALJ erred by not re-contacting Dr. Massey to resolve ambiguities in his opinions.

In *Walker v. Secretary of Health and Human Services*, 980 F.2d 1066 (6th Cir. 1992), the Sixth Circuit held:

> The medical opinion of the treating physician is to be given substantial deference – and, if that opinion is not contradicted, complete deference must be given. The reason for such a rule is clear. The treating physician has had a greater opportunity to examine and observe the patient. Further, as a result of his duty to cure the patient, the treating physician is generally more familiar with the patient's condition than are other physicians.

*Id.* at 1070 (internal citations omitted).

The ALJ rejected Dr. Massey's opinions as "internally inconsistent" and "not supported by substantial evidence." (Tr. 24). Explaining this determination, the ALJ stated:

> Treating physician Massey issued opinions regarding the claimant's functional limitations on May 22, 2006. He reported the claimant could work "0" hours during an 8-hour day. He reported the claimant could not walk, stand or sit for more than 1 hour for each activity. Additionally, he stated the claimant could "never" or "rarely" lift more than 10 pounds. Dr. Massey's report is internally inconsistent, reporting the claimant could work no hours during the day; yet also reporting he could walk/sit/stand for an hour. The report that the claimant could not lift even 10 pounds is in stark contrast to the reports of the claimant's friend, Judith Davis, who reported the claimant could lift 25-50 pounds. Dr. Massey's opinions are not supported by substantial medical evidence and given little weight.

(*Id.* (internal citations omitted)).

Plaintiff rejects the notion that Dr. Massey's opinions are internally inconsistent and argues that, at the very least, this "perceived inconsistency" required the ALJ to re-contact Dr. Massey for further clarification. 20 C.F.R. §§ 404.1512(e) and 416.912(e) provide in pertinent part:

> We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.

Pointing out that Dr. Massey had not treated Plaintiff since November 2005, (tr. 634), Defendant argues that the ALJ was not required to re-contact Dr. Massey, since the ALJ

5

relied on evidence from a more recent examination by Dr. Raymond Santucci (Doc. #14 at 9). Defendant notes that at the time Dr. Massey last treated Plaintiff, he had not undergone cardiac surgery. (*Id.*) As Defendant points out, Dr. Santucci examined claimant after the cardiac surgery and also considered a pulmonary function test from January 2006 that was normal. (Tr. 24, 614-17). Defendant cites 20 C.F.R. §§ 404.1512(e) and 416.912(e) in support of the proposition that re-contacting a treating physician is not required where the ALJ relies on a more recent examination. However, Defendant cites no case law to support the idea that the cited regulations discharged the ALJ from his duty to re-contact the treating physician because he relied on a more recent medical examination.

The Court finds that the ALJ should have re-contacted Dr. Massey for clarification of the perceived "internal inconsistency" in Dr. Massey's opinions, since the evidence received from Dr Massey was inadequate for the ALJ to determine whether Plaintiff is disabled. In the ALJ's decision, he explicitly acknowledges that Dr. Massey's report contains an internal inconsistency. In a RFC questionnaire, Dr. Massey assessed Plaintiff's maximum tolerance for sustained, reliable work activity in a work-day as "0" hours. (Tr. 634). The very next question on the questionnaire required Dr. Massey to estimate how much of that time "could be spent at work activity" walking, standing, or sitting. (*Id.*) Dr. Massey indicated that Plaintiff could walk for "1" hour, stand for "1" hour, and sit for "1" hour. (*Id.*) The ALJ determined that this discrepancy warranted rejection of Dr. Massey's opinion as a treating physician. However, plausible explanations for this perceived inconsistency exist. For instance, perhaps Dr. Massey believed that performing each of these activities (walking, standing, and sitting) for one hour apiece did not amount to

"sustained, reliable work activity."[1] Perhaps, regardless of Plaintiff's ability to perform these activities, Dr. Massey felt that, in light of his determination that Plaintiff would "frequently" experience pain severe enough to interfere with attention and concentration, Plaintiff would not be able to engage in "sustained, reliable work activity." (Tr. 634). Without re-contacting Dr. Massey for clarification, the internal inconsistency acknowledged by the ALJ in his decision cannot be resolved, and both the Court and the ALJ are left to speculate as to the meaning of Dr. Massey's opinions. Therefore, it was error for the ALJ not to re-contact Dr. Massey. This error requires a remand.

As noted, the ALJ also cited a third-party function report as grounds for rejecting Dr. Massey's opinions. Judith Davis, a friend of the Plaintiff's, completed a third-party function report which opined that Plaintiff could lift about 25-50 pounds. (Tr. 103). In his decision, the ALJ stated, "[t]he report that claimant could not lift even 10 pounds is in stark contrast to the reports of the claimant's friend, Judith Davis, who reported the claimant could lift 25-50 pounds." (Tr. 24). Further examination of this third-party function report reveals that Judith Davis indicated that she helps Plaintiff dress and shower. (Tr. 101). While the third-party function report is certainly evidence to be considered, neither ALJ's decision nor the Defendant's brief provide an adequate basis for rejecting the medical opinion of a treating

---

[1] Social Security Ruling 96-8p, 1996 WL 374184 (S.S.A.), provides in pertinent part:
In assessing RFC, the adjudicator must discuss the individual's ability to perform *sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule)*, and describe the maximum amount of work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.
*Id.* at *7 (emphasis added).

physician who has treated Plaintiff for almost 50 years due to a perceived inconsistency with a third-party function report.

Notwithstanding the error requiring remand, Plaintiff's other complaints concerning the ALJ's findings as to Plaintiff's RFC are without merit.  Plaintiff argues that the ALJ erred in adopting the opinions of consultative examiner Dr. Raymond Santucci. (Doc. #13-2 at 13).  Plaintiff contends that an inconsistency exists in Dr. Santucci's medical opinions, which is in need of clarification.  Dr. Santucci determined that Plaintiff was capable of performing "only a mild amount of sitting, ambulating, standing, bending, kneeling, pushing, pulling, lifting and carrying heavy objects." (Tr. 617).  On a functional capacities form, however, Dr. Santucci concluded that Plaintiff could occasionally lift and carry up to 20 pounds, and could sit up to 8 hours and stand/walk up to 4 each during a 8 hour work-day. (Tr. 618).  Plaintiff contends that Dr. Santucci's indication that Plaintiff can only engage in "mild" amounts of these activities necessitates a finding that Plaintiff is only capable of performing sedentary work and, perhaps, not even that.

Based on Dr. Santucci's opinions, the ALJ determined that Plaintiff was capable of performing a range of light work. (Tr. 20-29).  Rather than evidencing an inconsistency, as Plaintiff suggests, the functional capabilities form  clarifies the "mild" amount of work referenced in Dr. Santucci's narrative report. (Tr. 618).  This is even more apparent when considering the fact that the information provided by Dr. Santucci on the Functional Capacities Form is consistent with the physical exertional requirements of light work.  20 C.F.R. § 404.1567(b).

With regards to Plaintiff's mental impairments, the ALJ stated that "claimant's psychological treatment sources have imposed no significant limitations on the claimant's

ability to perform the basis aspects of unskilled work.  The foregoing assessments of the state agency consultative psychologists are not contradicted by the longitudinal record of Dr. Piyush D. Patel." (Tr. 25 (internal citations omitted)).  Plaintiff argues that it is difficult to understand how a Global Assessment of Function (GAF) of 50 (twice assigned by Dr. Patel in 2005) does not qualify as a contradiction. (Doc. #13-2 at 13-14, Tr. 213-14, 410-11).

Notwithstanding Plaintiff's GAF argument, Dr. Patel did not accompany his GAF scores with any suggestion that claimant was unable to do any work.  *See Kornecky v. Comm'r of Social Security*, 167 Fed. Appx. 496, 511 (6th Cir. 2006) (unpublished opinion). In the absence of evidence indicating that Dr. Patel assigned this GAF score because he perceived an impairment in claimant's ability to work, "the score, standing alone, does not establish an impairment seriously interfering with plaintiff's ability to perform basic work activities." *Id*. (quoting *Quaite v. Barnhart*, 312 F. Supp. 2d 1195, 1200 (E.D. Mo. 2004)). Additionally, case law supports the proposition that consideration of GAF scores is not essential to determining an individual's RFC.  *See Howard v. Comm'r of Social Security*, 276 F.3d 235, 241 (6th Cir. 2002) ("While a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy.").  The Sixth Circuit has stated that it is "not aware of any statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score in the first place." *Kornecky*, 167 Fed. Appx. at 511.

Plaintiff also argues that the ALJ improperly determined that claimant's complaint that he becomes nervous around strangers does not amount to a significant impairment. (Doc. #13-2 at 13, Tr. 25).  However, there is no evidence in the record that this amounts to a severe impairment which would preclude Plaintiff from working.

Additionally, Plaintiff takes issue with the ALJ's supposed reliance on the opinions of non-examining state agency reviewers. (Doc. #13-2 at 12). The only citation to any of these medical records provided by Plaintiff references a July 8, 2005, assessment signed by Dr. S. Mukherjee. (Tr. 444). However, a review of the ALJ's decision reveals that he explicitly rejected Dr. Mukherjee's opinion.[2]

## 2. Plaintiff's Allegations of Disabling Pain

Plaintiff contends that the ALJ failed to perform a proper credibility analysis. Plaintiff alleges that the ALJ failed to analyze his symptoms under 20 C.F.R. § 404.1529, merely paid "lip service" to Social Security Rulings 96-2p, 1996 WL 374188 (S.S.A.), and 96-7p, 1996 WL 374186 (S.S.A.), and "found [claimant] less than credible simply because he could not remember when he gave up work precisely." (Doc. #13-2 at 14). Contrary to Plaintiff's characterization of the ALJ's credibility determination, the Court finds that the ALJ properly considered claimant's subjective allegations of pain.

In *Duncan v. Secretary of Health & Human Services*, 801 F.2d 847 (6th Cir. 1986), the Sixth Circuit prescribed an analytical framework for evaluating subjective allegations of pain. It stated:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can be reasonably expected to produce the alleged disabling pain.

*Id.* at 853.

---

[2] The ALJ stated, "I reject the opinion of state agency reviewing physician, Dr. Mukherjee." (Tr. 24).

Objective medical evidence of record confirms that claimant suffers *some* degree of pain as a result of his impairments. However, the evidence of record does not support the severity of pain alleged by claimant. As the ALJ concluded, "[t]he evidentiary record as a whole does not confirm the degree of total disability alleged by the claimant or a condition reasonably expected to give rise to the symptoms alleged. The claimant's allegations are not completely credible based on inconsistencies between subjective complaints and the objective medical record." (Tr. 25).

As Plaintiff points out, the ALJ noted that claimant understated his activity and earnings in 2004. (Tr. 25). Accordingly, the ALJ determined that this undermined the credibility of claimant's allegations that he was totally disabled during this time. (*Id.*) However, rather than finding claimant to be less than credible based simply on his inability to remember when he stopped working, as Plaintiff suggests, the ALJ referenced a number of inconsistencies between the evidence of record and Plaintiff's allegations of totally disabling pain.[3] For example, the ALJ noted that Plaintiff testified that his stomach and abdominal pain has improved with treatment. (Tr. 25, 687) The ALJ observed that, despite his bipolar disorder, claimant had worked for years without difficulty. (Tr. 25) He also noted that Plaintiff's "multiple impairments have all responded well to medications" and that his psychological treatment sources have not imposed significant limitations on him. (*Id.*)

The ALJ considered Plaintiff's testimony and the medical evidence of record and determined that they did not support Plaintiff's subjective allegations of pain. In light of the

---

[3] SSR 96-7p states that consistency is a strong indication of the credibility of an individual's statements. *Id.* at *5-6. An ALJ must consider the degree to which the individual's statements are consistent with the objective medical evidence and the consistency of the individual's own statements. *Id.*

11

evidence presented to the ALJ, this was a reasonable conclusion and one the ALJ was entitled to make. *Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). It is well-settled that credibility determinations related to a claimant's subjective pain complaints rest with the ALJ. *Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987).

### III. CONCLUSION

This matter is remanded for further administrative proceedings consistent with this opinion. On remand, the ALJ shall re-contact Dr. Massey for clarification of the ambiguities within his opinion.

Accordingly, for the reasons stated,

**IT IS ORDERED** that the decision of the Commissioner is found not to be supported by substantial evidence and is hereby **REVERSED**, with this action **REMANDED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. #13) is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that Commissioner's Motion for Summary Judgment (Doc. #14) is hereby **DENIED**.

A Judgment reversing and remanding this matter will be entered contemporaneously herewith.

Dated this 17th day of March, 2008.



Signed By:
*David L. Bunning* DB
United States District Judge

G:\DATA\SocialSecurity\MOOs\6-07-50-CasterMOO.wpd